# STATE v. S. A. McPHAIL.[1]

January 23, 1914.

Nos. 18,478—(28).

**Membership in board of trade.**
    1. A membership in the Duluth Board of Trade is property.

**Taxable property.**
    2. It is property which the legislature, under the Constitution of the state, might by appropriate laws tax.

**Taxation of personal property.**
    3. R. L. 1905, § 794, providing that all real and personal property in this state and all personal property of persons residing therein, except exempt property, is taxable, means that all personal property of whatever nature not exempt from taxation shall pay taxes. Under this section a membership in the Duluth Board of Trade was properly taxed as personal property of the member.

[1] Reported in 145 N. W. 108.

**Same.**

4. R. L. § 797, providing that "Personal property shall be construed to include," and naming 11 classes of property, does not exempt from taxation or render not subject to taxation personal property not included within any of the classes named.

**Construction of statute.**

5. There has been no such settled construction of the statutes referred to as to justify the application here of the doctrine of practical construction.

**Constitution.**

6. The taxation of such a membership does not violate any provision of the Federal or state Constitution.

In the matter of proceedings in the district court for St. Louis county to enforce collection of personal taxes within that county delinquent on April 1, 1912, defendant answered. The facts are stated in the opinion. The matter was tried before Dibell, J., who made findings and ordered judgment against defendant in the sum of $15.97. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Francis W. Sullivan,* for appellant.
*Charles E. Adams,* for respondent.

BUNN, J.

Defendant on May 1, 1911, was the owner of one membership in the Duluth Board of Trade. The assessor of the city of Duluth on May 1, 1911, assessed this membership at the sum of $500; $100 was allowed defendant as an exemption, leaving a total assessment of $400. Defendant protested against the assessment of such membership to the assessor, the board of equalization, and the board of review. In these proceedings to enforce the collection of personal property taxes for 1911, defendant answered the citation served upon him, and the issues were tried by the court. Its decision was that the membership was personal property subject to taxation, and properly taxed under the laws of this state. Defendant moved for a new trial. The motion was denied, and this appeal taken from the order.

1. The question at the threshold is whether a membership in the Duluth Board of Trade is personal property.

The general nature of the business of the Duluth Board of Trade is to establish and maintain uniformity in commercial usages; to enforce proper conduct in trade; to adjust controversies and disputes among its members; to acquire and disseminate valuable business information, and to furnish a commercial exchange at Duluth, Minnesota, in the furtherance of its business pursuits. The Board of Trade has no capital stock. It has a membership of 200, and a certificate of membership is issued to each member. It does not engage in the grain business for profit, but furnishes facilities and conveniences for the transaction of the grain business by its members. It owns and maintains a building and trading room, and furnishes to its members telegraphic and other information as to matters important in the grain trade; it keeps a record of actual transactions upon the board, provides means for arbitrating and settling differences, and does such things as facilitate trading in grain in the same general way as do the various exchanges and boards of trade throughout the country; its members are required to pay annual dues.

Membership in the Board of Trade can only be transferred upon certain conditions, expressed in the articles of incorporation, rules, and by-laws, all of which regulations are intended to prevent men of unfit business character and standing to become members of the board; but such memberships are bought and sold, and have a recognized fluctuating value from time to time and are used as collateral at the banks, and are valued by the Board of Trade in fixing the assets of one of its members. On May 1, 1911, a membership was of the value of from $3,000 to $3,500, and at times prior and after that date, the value ranged from $3,000 to $4,800. On May 1, 1911, the Duluth Board of Trade owned real, and tangible personal property of the value of $450,000 to $500,000, and taxes were assessed and paid thereon.

We hold that a Board of Trade membership is property. We adopt as a part of this opinion the following succinct analysis of the question in the memorandum of the trial court: "There is no diffi-

culty in holding that a membership in the Board of Trade is property. It confers a right to do particular business in a particular and advantageous way. It brings the holder in contact with men with whom he may deal. The right to trade upon the floor of the board is substantially essential to the conduct of the grain buying and selling business. A membership has a use value and a buying and selling or market value. It is bought and sold. Its value is considered by the Board of Trade in determining the assets of a member. There is a lien upon it for balances due members. It is used as collateral at the banks. It passes by will or descent and by insolvency or bankruptcy. A few memberships represent in actual cash value more than the life-time savings of an ordinary active and thrifty man. It is true that there are certain restrictions in the ownership and use of a membership. These may increase or decrease its value, probably in the case of a board of trade membership greatly enhance it. They do not prevent its being property."

The authorities support this view. Hyde v. Woods, 94 U. S. 523, 24 L. ed. 264, in which Mr. Justice Miller said there could be no doubt that a membership in the San Francisco Stock and Exchange Board was property. Sparhawk v. Yerkes, 142 U. S. 1, 12 Sup. Ct. 104, 35 L. ed. 915 (seat in New York Stock Exchange); Page v. Edmunds, 187 U. S. 596, 23 Sup. Ct. 200, 47 L. ed. 318 (membership in Philadelphia Stock Exchange). In these cases it is held that such a membership is property, which passes to the trustee in bankruptcy of the member's estate, because it could be "transferred" by the member, was of decided value, and could be sold subject to election by the exchange. "While the property is peculiar and in its nature a personal privilege, yet such value as it may possess, notwithstanding the restrictions to which it is subject, is susceptible of being realized by creditors." Sparhawk v. Yerkes, supra. In Powell v. Waldron, 89 N. Y. 328, 42 Am. Rep. 301, it was held that a seat in the New York Cotton Exchange was property, and as such passed to a receiver in supplementary proceedings on execution against the owner. In Platt v. Jones, 96 N. Y. 24, a seat in the New York Stock Exchange was held property which passed to the owner's assignee in bankruptcy. In the Matter of Hellman, 174

N. Y. 254, 66 N. E. 809, 95 Am. St. 582, it was held that a seat in the New York Stock Exchange is property subject to the inheritance transfer tax prescribed by a law of the state which defined the words "estate" and "property," as used in the law, as including *"all property or interest* therein situated within or without the state." Further cases to the same effect are: Odell v. Boyden, 150 Fed. 731, 80 C. C. A. 397, 10 Ann. Cas. 239; In re Currie, 185 Fed. 263, 107 C. C. A. 369; Nashua Savings Bank v. Abbott, 181 Mass. 531, 63 N. E. 1058, 92 Am. St. 430. That such a membership is a species of property is recognized by decisions of this court. State v. Chamber of Commerce of Minneapolis, 77 Minn. 308, 79 N. W. 1026; Evans v. Chamber of Commerce of Minneapolis, 86 Minn. 448, 91 N. W. 8; McCarthy Bros. Co. v. Chamber of Commerce of Minneapolis, 105 Minn. 497, 117 N. W. 923, 21 L.R.A.(N.S.) 589.

Defendant points to the definitions of the word "property" in the dictionaries, law dictionaries, and decided cases, and insists that the right to alienate or transfer is an essential incident to property. As has been shown, there is a right to transfer a Board of Trade membership, though such right is subject to the right of the board to disapprove the sale. It is true that the right to dispose of the membership, as well as the right of the member to retain it and use it, is subject to the rules of the board, as expressed in Evans v. Chamber of Commerce, supra, "clogged with conditions." But that the membership is still "property" we think is true. Whether it is property that is taxable under the laws of the state, is another question and will be treated separately. Defendant calls a membership in the Board of Trade a mere personal privilege, and compares it to a membership in a social club or church. The distinction is we think obvious. And the same is true of the reputation of a lawyer, physician or banker. All these things have a value to the owner, but there is nothing tangible that he may sell for a consideration, put up as collateral, or which may be reached by his creditors. But a membership and seat in a Chamber of Commerce, Board of Trade, or Stock Exchange, not only is often of great value, and may be alienated by the owner, but under the decisions

cited, may be reached by his creditors. It may be pledged as collateral, and passed by will or descent. As stated by the trial court and in some of the decisions, the fact that there are restrictions upon the ownership and transfer, bears more upon the question of value, than it does upon the question whether the membership is property.

2. And we think that such a membership is personal property of a character that is properly taxable. That is, that the legislature, under the provisions of the Constitution, has the power to tax property of this character. The Constitution of the state, at the time of the enactment of the laws hereinafter considered, provided that "laws shall be passed taxing * * * *all real and personal property* according to its true value in money." That this provision granted the legislature the power to enact laws taxing such property as a membership in a board of trade or stock exchange is fairly clear from the consideration of the nature of such a membership, and the language of the Constitution. Indeed, not only was the power granted, but a duty to enact such laws was imposed.

3. The constitutional provisions are not however self-executing. It was necessary for the legislature to exercise the power given and to perform the duty imposed, by passing laws. The question then is whether our statutes providing for the taxation of property include and cover property of the character of a membership in a board of trade or chamber of commerce.

The provision requiring the legislature to pass laws taxing all real and personal property existed in the Constitution at the time of its adoption and until the amendment of 1906. While Minnesota was still a territory, it had a statute providing that all property, real and personal, not expressly exempted, should be subject to taxation. R. S. 1851, c. 12, § 1; Statutes 1849–1858, c. 9, § 1. In the revision of 1866, [p. 153, c. 11] it is declared that "all property, whether real or personal, in this state * * * is subject to taxation." Substantially the same provision has continuously been in our statutes and is there at the present time. G. S. 1878, c. 11, § 1; G. S. 1894, § 1508; R. L. 1905, § 794; G. S. 1913, § 1969. Under section 794, R. L. 1905, which provides that "all real and personal property in this state, and all personal property of persons

residing therein, \* \* \* is taxable, except such as is by law exempt from taxation," there would be little if any difficulty in holding that a board of trade membership, being personal property of a character which might be made subject to taxation, and not exempted from taxation, was included in the words "all personal property." Were it not for section 797, it would be clear that the assessment and levy by the proper officers of a tax on such a membership would be justified.

Section 797 names 11 specific classes of personal property, in no one of which are by name included Board of Trade memberships. So far as here material, its language is as follows: "Personal Property \* \* \* shall be construed to include:

"1. All goods, chattels, moneys and effects." Then follow 10 other particular classes of property.

Section 835 provides that the assessor shall fix the value of items of personal property under 30 heads, the last of which is "The value of all other articles of personal property not included in the preceding items."

We think it should not be held that section 797 was intended to describe all personal property that was subject to taxation. The language of the section does not compel such a conclusion. "Shall be construed to include" does not necessarily mean "shall only include." The section was not intended to be restrictive, but rather to help define what was meant by "all personal property," as that term is used in section 794. This view is greatly strengthened by the unquestioned fact that it is the settled policy of the state, as expressed in its Constitution, statutes, and decisions, that all property within the state shall be taxed, unless exempt. Board of Co. Commrs. of Rice County v. Citizens' Nat. Bank of Faribault, 23 Minn. 280, 286; State v. Jones, 24 Minn. 251; County of Olmsted v. Barber, 31 Minn. 256, 17 N. W. 473, 944; In re Jefferson, 35 Minn. 215, 219, 28 N. W. 256; State v. Stearns, 72 Minn. 200, 222, 75 N. W. 210. In the Rice County case, decided in 1877, in referring to section 1, c. 1, p. 1, Laws 1874, which provides that "all real property in this state, and all personal property of persons residing therein \* \* \* is subject to taxation" the court said: "The evident purpose of this

section was to declare, in general terms, that all property, both real and personal, within the jurisdiction of the state, unless specially exempted, should be subject to taxation." In State v. Jones, where it was decided that a certain debt was property and subject to taxation, Chief Justice Gilfillan said: "This debt was property, and it was the intention both of the Constitution and statute that all property, unless expressly exempted, should be taxed." At the time these and the other decisions were rendered, there were in force statutory provisions similar to section 797, Laws 1874, p. 1, c. 1, § 3, provided that "personal property shall, for the purposes of taxation, be construed to include" certain described classes of property, and the same provision was contained in chapter 1, section 3, Laws 1878, in chapter 11, § 3, G. S. 1878, and in section 1510, G. S. 1894. In no case has it been considered that these provisions amounted to a declaration that no property was to be taxed that was not covered by the classes. It would have been a breach on the part of the legislature of a duty imposed by the Constitution to omit from taxation property that was not exempt, and we certainly should not find such a breach unless the statute is fairly open to no other construction.

Section 835, before quoted, defines what the statement of the property owner shall contain. He is required to list, and the assessor to fix the value of, "all other articles of personal property not included in the preceding items." In State v. Western Union Tel. Co. 96 Minn. 13, 104 N. W. 567, this omnibus clause was said to be adequate for the taxation of the property of foreign corporations as a system. We are of the opinion that, when the legislature declared that all personal property should be taxed, all that follows in the succeeding sections by the way of classifying property, defining how it shall be listed, assessed and taxed, is for the purpose of making it easier for the assessing officers to do their work, and attempting to advise the property owner as to his duties. The following language from Justice Jaggard's opinion in the Western Union case is pertinent at this point: "It is true that the taxing authorities of this state have failed to avail themselves of this means for properly increasing public revenue; but a privilege of exemption is not, therefore, to be based upon such official dereliction. It is an obvious rule

that a revenue statute should be construed upon the assumption that a legislature would make no discrimination, and would not attempt to provide for the collection of taxes on one kind of property without making provision for the collection of taxes on all other property equally subject to taxation."

We hold that section 797 was not intended to contain a statement of all personal property subject to taxation, and that the fact that board of trade memberships do not come under any of the 11 classes, does not mean that they are not to be taxed.

It is confidently asserted by defendant that the authorities in other states are uniform, to the effect that a seat or membership in a board of trade or stock exchange cannot be taxed. This is not quite true, as we shall point out, but it is not to be denied that in every case that has arisen in this country directly involving the question, the membership has escaped taxation. Mayor, etc. of Baltimore v. Johnson, 96 Md. 737, 54 Atl. 646, 61 L.R.A. 568; Thompson v. Adams, 93 Pa. St. 55; City & County of San Francisco v. Anderson, 103 Cal. 69, 36 Pac. 1034, 42 Am. St. 98; People v. Feitner, 167 N. Y. 1, 60 N. E. 265, 82 Am. St. 698. In the Maryland case, it does not appear that there was a statute declaring that all personal property was subject to taxation. The court recognized that a membership in the Baltimore Stock Exchange was in a certain sense property, but held that the legislature had not expressed an intention to tax such property, and had made no provisions as to *how* such property should be taxed. The Pennsylvania and California cases proceed on the ground that such a membership is not property, but a mere personal privilege. This ground is unsound, as we have already held in this opinion. The New York case, People v. Feitner, held that an exchange membership was property, but was not taxable because the legislature had not enacted a statute that covered such property. The New York statute is quite similar to ours, and the decision would be good authority but for the subsequent case of In the Matter of Hellman, 174 N. Y. 254, 66 N. E. 809, 95 Am. St. 582. The Hellman case, while not overruling People v. Feitner, seems to us inconsistent with that decision. Under a statute prescribing an inheritance or "transfer" tax it was provided that a certain tax should

be imposed on the transfer of *any real or personal property* by will or descent. By a section of the act, the words "estate" and "property" as used in the law, were defined as including "all property or interest therein, whether situated within or without this state." It was held that a seat in the New York Stock Exchange was property, and subject to the tax. Referring to People v. Feitner, the court said: "We did not question this proposition," (that such a seat was property) "but our decision proceeded on the ground that the seat did not fall within what Judge Vann termed 'the somewhat restricted definition of the tax laws.'" We are unable to see any real distinction between an inheritance tax imposed upon "all property" and the provision of our, statute that "all property" is subject to taxation. The Hellman Case and the statement of Justice Lurton in O'Dell v. Boyden, 150 Fed. 731, 80 C. C. A. 397, 10 Ann. Cas. 239, that such a membership is "descendible, taxable and assignable," constitute our reason for saying that the statement that the authorities are unanimous against the taxation of such a membership, is not quite true.

As to the cases cited holding that an associated press franchise, a bank franchise, good will of a newspaper, ground rent under a lease, were not taxable under the various statutes of the states in which the decisions were made, it is sufficient to say that they are not particularly in point. In the case of State v. Western Union Tel. Co., this court took a position that seems to render these cases out of line with the law in this state.

4. We attach little weight to the argument of practical construction. The evidence shows no such settled construction of the statute as to warrant us in applying the doctrine here.

5. We do not sustain the claims that the taxation of memberships in a Board of Trade or Stock Exchange, would violate provisions of the Federal or state Constitution. It is argued that such taxation would be class legislation and violate the equality clause in the Minnesota Constitution, because the privileges enjoyed by members of social clubs, commercial clubs, golf clubs, secret and church societies, are not subject to taxation. We see no improper classification here, nor any lack of equality or uniformity. Nor would it be double

taxation. The members of the board are not required to pay taxes on the physical and tangible property of the board, nor does the board pay taxes upon the intangible rights which constitute the value of a membership.

And we hold that proceedings to tax such a membership do not deprive the member of his property without due process of law, take property for public use without just compensation, or deny such member the equal protection of the laws, in violation of familiar provisions of the Federal Constitution and amendments.

Our conclusion, after a careful consideration of the arguments and briefs in this case and in the case of Rogers v. County of Hennepin, infra, page 539, 145 N. W. 112, is that the trial court properly rendered judgment against defendant for the tax assessed against his membership in the Duluth Board of Trade.

Order affirmed.