THRALL v. GUINEY.

1. TAXATION—DOUBLE TAXATION—CONSTITUTIONAL PROVISIONS.
    Double taxation, in order to violate the constitutional rule of
    uniformity, must exist within this State, our courts not being
    concerned with taxes levied outside the State.

2. SAME—CORPORATE SHARES — FOREIGN CORPORATIONS —ASSESS-
MENT.
    Under section 3831, 1 Comp. Laws, shares of stock in a foreign
    corporation owning property within and without the State,
    belonging to a resident of this State, are properly assessed to
    him here; the investment represented by such stock not be-
    ing "property actually and permanently invested in busi-
    ness in another State" within clause 5 of the statute cited.

3. SAME—PROPORTIONATE ASSESSMENT.
    A resident of this State owning shares of stock in a foreign cor-
    poration which owns property in this and several other
    States, on which it pays taxes according to the law of the
    States where the property is situated, cannot complain of an
    assessment to him in this State of the value of his shares
    diminished by the proportion which the value of the corpora-
    tion's property in this State bears to its whole property.

4. SAME—FOURTEENTH AMENDMENT.
    One who has the benefit of a construction of a tax law which,
    as construed, affects him no differently than it does any
    other citizen of the State owning property of the same class,
    cannot complain that his assessment violates the fourteenth
    amendment of the Constitution of the United States.

Certiorari to Wayne; Rohnert, J. Submitted June 20,
1905. (Calendar No. 21,166.) Decided September 20,
1905.

Mandamus by George Thrall, administrator of the es-
tate of Harrison H. Taylor, deceased, to compel Benja-
min Guiney, Frank A. Altenbrandt, and Edward F. Mar-
schner, board of assessors of the city of Detroit, to cancel
an assessment of corporate stock. There was an order
denying the writ, and relator brings certiorari. Affirmed.

The plaintiff in certiorari, the relator below, is administrator of the estate of Harrison H. Taylor, deceased. Mr. Taylor, at the time of his death and for many years prior thereto, was a resident of the city of Detroit. In association with others he developed the Detroit Screw Works, a corporation organized and existing under the laws of the State of Michigan, into a large manufacturing institution. He was a large shareholder in the corporation. On March 31, 1900, the Standard Screw Company, a corporation organized and existing under the laws of the State of New Jersey, acquired the property of the Detroit Screw Works, and Mr. Taylor received in part payment for his stock in the Detroit Screw Works $39,700 of preferred stock, par value, of the Standard Screw Company. The Standard Screw Company is also the owner of manufacturing plants in the States of Massachusetts, Connecticut, Ohio, and Illinois. The property in Michigan constitutes about one-fifth of the entire property of the company. From the organization of the Detroit Screw Works its property has been regularly assessed in this State in the manner provided by law. Since the acquisition of the property by the Standard Screw Company, the real and personal property has been regularly assessed in Detroit; the present assessed valuation thereof being $186,200. All of the other properties of the company are assessed and taxed in the respective States where the property is situated, in accordance with the laws of such States. The respondents are the assessors of the city of Detroit. They have assessed the stock of said estate in the Standard Screw Company at the sum of $31,760, deducting one-fifth of the value on account of the property of the company located in this State.

The writ of mandamus to compel the respondents to strike the assessment of the stock from the rolls was refused. It was urged in the court below, as it is here, that:

(*a*) The assessment against the Standard Screw Company upon its properties in this State and in the other

States above mentioned, and the assessment against said estate upon its shares of stock in said company, result in a double assessment upon the same property and upon the same value.

(b) The assessment against the estate is illegal and contrary to the Constitution and laws of the State of Michigan.

(c) The assessment is in violation of the Constitution of the United States, and constitutes a taking of the property of the estate without due process of law.

So far as the facts challenge the justice of the taxation complained about, they are forcibly presented in language which we take from the brief for plaintiff in certiorari:

"The precise question here in issue has never been passed upon in this State.

"In the case of *Bacon* v. *Board of State Tax Com'rs*, 126 Mich. 22 (60 L. R. A. 321), it was held that shares of stock in a foreign corporation were taxable, where all of the property of the corporation was outside of the State.

"In the case of *Stroh* v. *City of Detroit*, 131 Mich. 109, it was held that shares of stock in a foreign corporation were not taxable, where all of the property of the corporation was inside of the State.

"The question here presented is whether stock in a foreign corporation is taxable, where a portion of its property is within the State and the remainder in other States. Speaking practically, this question is of much more general application than either of those heretofore decided. Many institutions like that in the case at bar have arisen in this State in recent years. In this case Mr. Taylor, in association with others, had built up a large manufacturing business. His interest was represented by stock in the Detroit Screw Works. Under the law, the property of the corporation was taxed, but the stock in the corporation was not taxed. Thus this property bore its proportionate share of taxation. For business reasons satisfactory to itself the corporation joined with other companies in other States engaged in the same line of business. All of these companies had property situated and taxed in the other States. The combination of the companies added nothing to the total of their property. Mr. Taylor, like the others interested, received stock in the new association or company in payment for his stock in the Detroit Screw Works. This exchange added nothing to the

actual property. The actual property of the new company consisted simply of the combined properties of the old companies. The value of the stock in the new company depended solely and entirely on the value of the combined properties. Therefore the stock interests do not represent new property, but only the proportionate shares of the shareholders in property already in existence. In a sense, it may be said that the stock going to the shareholders of each constituent company represents their respective share in the property of that company.

"Now, if these shares of stock are also subject to taxation, it results in double taxation, and places an extraordinary penalty on business associations with men engaged in the same line of business in other States. Of course, combinations of the same kind between companies in this State in the same line of business would not be subject to the same penalty. Unfortunately this penalty will fall upon the State itself; for if, by forming such associations, men subject themselves to double taxation, the inevitable result will be that they will remove from this State to those which pursue a more just and liberal policy upon this subject.

"The board of assessors have attempted to steer a middle course between the *Bacon Case* and the *Stroh Case* by deducting from the value of the stock the value of the property inside of the State. This, however, only obviates the difficulty pro tanto and still leaves actual double taxation as to the remainder. As we shall demonstrate later, there is no legal authority for this method of taxation, nor is there any machinery for so doing. We are, therefore, clearly remitted to the question as to whether the *Bacon Case* or the *Stroh Case* shall control under the facts in this case."

*Orla B. Taylor*, for relator.

*P. J. M. Hally* ( *Timothy E. Tarsney*, of counsel), for respondents.

OSTRANDER, J. ( *after stating the facts*). The attack of relator is made upon a particular assessment of property, and also upon legislation, or upon the construction of legislation, claimed by respondents to sustain the assessment. The statute (1 Comp. Laws, § 3831) reads as follows:

"For the purposes of taxation, personal property shall include: * * *

"5. All goods, chattels, and effects belonging to inhabitants of this State, situate without this State, except that property actually and permanently invested in business in another State shall not be included. * * *

"7. All shares in corporations organized under the laws of this State, when the property of such corporations is not exempt, or is not taxable to itself; or when the personal property is not taxed.

"8. All shares in banks organized within this State, under the laws of this State or of the United States, at their cash value, after deducting the assessed value of real property owned by and assessed to such banks.

"9. All shares in foreign corporations, except national banks, owned by citizens of this State."

The language of the statute does not suggest a rule of taxation not uniform. It is said in the case of *Stroh* v. *City of Detroit*, 131 Mich. 109, the statute having been applied by taxing officers according to its terms, that the result was not consistent with the policy of the State nor the constitutional rule of uniformity. In that case the owner of stock in a foreign corporation, the entire property of which was in Michigan and was taxed in Michigan, was assessed the value of his shares. It was held that the assessment of the shares should be vacated. In *Bacon* v. *Board of State Tax Com'rs*, 126 Mich. 22 (60 L. R. A. 321), also, the law was applied by the taxing officers according to its terms. An owner of shares of stock in a foreign corporation was assessed the value of his shares. It appeared that the property of the corporation was situated and was taxed outside the State. The assessment of the shares was sustained. In each of these cases there was, in fact, double taxation of property, if the shares of stock are considered as mere evidence of the interest of the holder of them in the property of the corporation. In only one of the cases was there such double taxation in this State. It is plain that the constitutional rule can apply only to the taxing of property by this State, and, this being so, judicial interference with the

subject can go no further than to see that as to taxes levied by and within the State the rule is observed.

Has the legislature exempted these shares of stock from taxation? It is said that the facts make a case to be governed by the provisions of clause 5, above quoted, and that proper construction would be expressed by the formula that shares of stock in foreign corporations shall be subject to taxation, except when the property is actually and permanently invested in business in another State. We are of opinion that this contention must be held to be disposed of against relator by the decision in *Bacon* v. *Board of State Tax Com'rs.*

It is said, also, that there is no statutory provision for taxing the stock of a foreign corporation after deducting the value of its property within this State. Undoubtedly this is true, and it is also true, as pointed out, that if assessors are to adopt the method pursued in this case, in assessing citizens of this State who own shares of stock in foreign corporations having some property within the State, difficulties will arise in fixing values of such shares for the purposes of assessment. In the case before us there has been an assessment of the shares of relator, which he consents is a proper one if they are held to be assessable. We are of opinion that such shares were taxable, and, whatever difficulties may arise in other cases, that he cannot complain of the particular assessment made. There are many difficulties in the assessment of property under laws designed and framed, so far as general enactments can be framed, to insure recognition and operation of constitutional requirements. Courts must meet and deal with such matters as they arise. We are not here required to say more than that we find no reason to interfere with the assessment complained about.

It will be of little benefit to enter upon a discussion of the contention of relator that the particular assessment violates rights secured to him by the fourteenth amendment to the Constitution of the United States. It is in testing the legislation by the Constitution of our own

State that we have experienced difficulty.    In the particular case, relator has the benefit of a construction of the law to which we are committed, and which affects him no differently than it does any other citizen of the State owning property of the same class.

The court rightly refused the writ, and the judgment is affirmed.

MCALVAY, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.