### CITY OF DETROIT v. KRESGE.

1. TAXATION—CONSTITUTIONAL LAW—DOUBLE TAXATION.
   The constitutional requirement of equal taxation, the ground for refusing double or duplicate taxation, has no application in cases where the alleged double taxation was not imposed by the same sovereignty.

2. SAME—CORPORATE STOCK—DOUBLE TAXATION.
   The taxation of shares of stock of a Michigan corporation, some of the property of the corporation being within and some without the State, and taxed where situated, is not double taxation.

3. SAME—CORPORATE STOCK—EXEMPTIONS.
   The property of a Michigan corporation owning property within and without the State is taxable to itself, and therefore the shares of such corporation are exempt from taxation under section 4002, subd. 7, 1 Comp. Laws 1915.

   Per OSTRANDER, C. J., and STEERE, BROOKE, and STONE, JJ.

Error to Wayne; Hally, J. Submitted October 17, 1917. (Docket No. 143.) Decided March 28, 1918. Rehearing denied June 20, 1918.

Assumpsit by the city of Detroit against Sebastian S. Kresge for the amount of an assessment for taxes.

Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Walter Barlow* (*Harry J. Dingeman,* of counsel), for appellant.

*Donnelly, Lyster & Munro* and *John H. Brennan,* for appellee.

MOORE, J. In this case it was stipulated as follows:

"Mr. Kresge is a resident of Detroit. The board of assessors in April, 1917, in making up the personal tax rolls, assessed him in the amount of $20,000. Subsequently the board of review increased his assessment to $3,000,000, after notice to him of their intention so to do. Mr. Kresge petitioned the board of review to reduce his proposed assessment of $3,000,000 to $5,429.18. * * * In his sworn statement Mr. Kresge, in answer to question Number 12, therein lists 66,548 shares of the common capital stock of the S. S. Kresge Company, of the par value of $100 per share. This company is a Michigan corporation formed under Act No. 232 of the Public Acts of 1903, as amended, commonly known as the Denby act. The company has an authorized and outstanding capital stock of $2,000,000 preferred stock and $10,000,000 common stock, shares worth $100 each, par value. In the tax statement, Mr. Kresge expressly claimed that the shares of stock in this company were exempt from taxation in this State. The board of review denied his petition and confirmed the assessment at the sum of $3,000,000. Mr. Kresge had an interview with the board of review, in which his shares of stock in the above company were discussed, and the board of review was advised by Mr. Barlow, chief assistant corporation counsel, that the shares of stock belonging to the petitioner were taxable, not for their cash value, but for a proportionate amount depending upon the proportion between the taxable property of the corporation outside of the State to its taxable property inside the State. Mr. Kresge, being asked what proportion of the property of the company was outside the State, stated that to the best of his opinion it

amounted to about 80 per cent. and 20 per cent. is located within this State. The amount of the assessment made by the board of review was based upon the amount of the property of the company so stated to be outside the State. It is conceded that Mr. Kresge's entire personal assessment for the year 1917 is based upon his ownership of these shares of stock.

"Mr. Kresge appealed from the decision of the board of review to the board of State tax commissioners, who sustained the assessment.

"The company is engaged in conducting mercantile establishments and stores for the sale of goods not only in Michigan, where it has quite a number of stores, but also has stores in 21 other States and in the District of Columbia; that the company owns no real estate, but has personal property at its stores in Michigan and in the other States, consisting principally of its stock of goods for sale at its several stores, and of the furniture and fixtures used in connection with the stores; that its property is of the same character in other jurisdictions as in Michigan, and that the company pays taxes upon such property wherever it maintains a store, not only in Michigan, but in other States. The articles that constitute the stock of goods on sale at the several stores of the S. S. Kresge Company outside of Michigan are not, as a general rule, shipped from or supplied from a depot or warehouse in this State, but are shipped direct from the manufacturer or parties from whom they are purchased, to the particular store where they are to be kept for sale.

"The S. S. Kresge Company is licensed to do business in the 21 other States and District of Columbia mentioned above, and does business there in its own name as a Michigan corporation. * * *

"It was proven on the trial that there was a general city tax of $41,426.64 levied against the defendant by the board of assessors of the city of Detroit on the basis of a personal property valuation of $3,000,000 assessed against him for the year 1917, and that there was a penalty of one per cent., $414.26, to be added thereto by reason of the non-payment of said original tax during the month of July, 1917, within which month Detroit city taxes are payable without addition thereto under the provision of the city charter. The

total amount of the tax due to the plaintiff from the defendant, if anything, was therefore $41,840.90 at the date of the trial."

The court directed a verdict in favor of the defendant. The case is here by writ of error.

Counsel are agreed that the only question involved is whether the court should have directed a verdict in favor of the plaintiff in the sum of $41,840.90, instead of directing a verdict in favor of the defendant.

The claim of counsel for the appellant is clearly and concisely stated as follows:

"It is double taxation for the same State, as Michigan, to tax the property and stock of the same corporation, whether domestic or foreign; but it is not double taxation for one State to tax property, and another State to tax the stock of the same corporation.

"Illustration: The stock of a foreign corporation, owned by a citizen of Michigan, is taxable by this State, though such corporation pays taxes to another State on all its property. *Bacon* v. *Board of State Tax Com'rs*, 126 Mich. 22.

"The stock of a foreign corporation, owned by a citizen of Michigan is not taxable by this State, if all of its property is taxed in Michigan. *Stroh* v. *City of Detroit*, 131 Mich. 109.

"The stock of a foreign corporation, owned by a citizen of Michigan, is taxable in Michigan, though such corporation pays taxes in Michigan on part of its property and taxes to other States on the rest; but it is so taxable less a *pro rata* reduction for the value of its property taxed in Michigan. *Thrall* v. *Guiney*, 141 Mich. 392.

"Shares of stock of foreign and domestic corporations have been, and are taxable alike, notwithstanding the apparent difference in the wording of the statutory provisions. *Stroh* v. *City of Detroit, supra.* page 115.

"General Principle: It is legal for this State to tax stock of corporations whether foreign or domestic, to its citizen stockholders, insofar as it does not tax their property to such corporations, viz.: If all of the corporate property is inside Michigan. Michigan

may not tax the stock at all; if all of the corporate property is outside Michigan, Michigan may tax the full value of the stock; and if part of the property is inside Michigan and part outside, Michigan may tax part of the value of the stock, but only part, for allowance must be made for the corporate property taxed in Michigan.

"In all three of these leading Michigan cases the court applied the rule of equitable taxation by giving the shareholders in the corporations therein mentioned the benefit of the exemptions specified in subdivision 7 of section 4002 of our statute (1 Comp. Laws 1915). The corporations in those cases were all foreign corporations, and giving subdivision 9 of said section a literal or strict construction all of the shares of foreign corporations owned by residents here would be subject to taxation here whether such corporations paid taxes on their property here or not.

"Subdivision seven of this section of the statute exempts shares of stock in a corporation from taxation only so far as the property of the corporation located here is exempt from taxation and insofar as taxes are paid on such property in this State. The payments of taxes on its property here is the reason why its shares of stock are not taxable to its shareholders residing here."

In *Bacon* v. *Board of State Tax Com'rs, supra,* Justice LONG, speaking for the court said:

"There are the questions of policy and abstract justice involved, both protesting against double taxation, but the legislatures of the States are judges of both policy and propriety so long as the constitutions have not forbidden it, and the weight of authority supports the claim that, in the absence of clear and express prohibition, they have not."

The stock assessed in that case was stock in a foreign corporation and the assessment was sustained for the reason that subdivision 9 provides for the assessment of "all shares in foreign corporations, except in national banks, owned by citizens of this State."

There is a clear intimation that a different result

would have been reached had the stock been that of a domestic corporation. Clearly that case is not controlling of the instant case.

In *Stroh* v. *City of Detroit, supra,* Justice Hooker in speaking for the court said:

"The Constitution of this State requires that there be a uniform rule of taxation and we have held that this forbids double taxation; and while double taxation may occur under any law, and that fact may, perhaps, not invalidate an act not intended nor calculated to impose it, and may not invalidate assessments made under it and according to its provisions, a law which in its terms necessarily requires it, under ordinary conditions, must be held invalid, or so construed as to avoid it. *Comstock* v. *City of Grand Rapids,* 54 Mich. 641 (20 N. W. 623) ; *Attorney General* v. *Board of Sup'rs of Sanilac Co.,* 71 Mich. 16 (38 N. W. 639) ; *Standard Life & Accident Ins. Co.* v. *Board of Assessors of Detroit,* 95 Mich. 468 (55 N. W. 112) ; *Detroit Citizens' St. Ry. Co.* v. *Common Council of Detroit,* 125 Mich. 675 (85 N. W. 96, 86 N. W. 809). * * *

"The taxation of shares to the shareholder, and property to the corporation, is clearly double taxation, within the spirit of the constitutional provision, and while we appreciate the fact that the shareholders and the corporation are different entities in the law, and that shares of stock are recognized as property, and distinct from the corporate property, it is plain that the shareholders are the corporation, and that they are the owners of its property. The Constitution does not permit the taxation of both property and shares, and we must, if possible, give such a construction to the law as to make it reconcilable with the Constitution."

In that case it was held that stock in a foreign corporation owned by a resident of the State could not be assessed where the property of the corporation was in this State and was taxed. Clearly this decision does not help the appellant.

In the case of *Thrall* v. *Guiney, supra,* the stock as-

sessed was stock of a foreign corporation, and it was claimed should have been exempt because of the provisions of subd. 5, reading:

"5. All goods, chattels, and effects belonging to inhabitants of this State, situate without this State, except that property actually and permanently invested in business in another State shall not be included"

and this court held that the language did not sustain the claim, and allowed the assessment to stand. What the result would have been in case the stock assessed was in a domestic corporation does not appear.

In *Union Trust Co.* v. *Detroit Common Council*, 170 Mich., at p. 699, Justice STONE, speaking for the court, said:

"This brings us to the second question raised by respondents, whether or not the relator can use the stocks owned by it in other Michigan corporations, which pay taxes in Michigan on their property, as an offset.

"It is the claim of relator that, insofar as stocks in corporations are concerned there can be no question that such stocks are exempt from taxation, and their value should be deducted from the taxable capital of relator. 1 Comp. Laws, § 3831 (1 Comp. Laws 1915, § 4002), subd. 7:

"'For the purposes of taxation, personal property shall include  *  *  *  (7) all shares in corporations organized under the laws of this State, when the property of such corporations is not exempt, or is not taxable to itself; or when the personal property is not taxed.'

"In the construction of this section due consideration should be given to section 3834 (1 Comp. Laws 1915, § 4005), which provides that all corporate property, except where some other provision is made by law, shall be assessed to the corporation, in the name of the corporation. *Stroh* v. *City of Detroit*, 131 Mich. 109 (90 N. W. 1029) ; *Bacon* v. *Board of State Tax Com'rs*, 126 Mich. 22 (85 N. W. 307, 60 L. R. A. 321, 86 Am. St. Rep. 524) ; *Thrall* v. *Guiney*, 141 Mich. 392 (104 N. W. 646, 113 Am. St. Rep. 528). We think that relator is right in this claim."

No Michigan case is called to our attention that is on all fours with the case before us, and it may be well to refer to the provisions of the statutes that are at all applicable.

The Kresge Company is organized under chapter 258, 4 How. Stat. [2d Ed.] (2 Comp. Laws 1915, chap. 175).

Section 31 (4 How. Stat. [2d Ed.] § 9562; 2 Comp. Laws 1915, § 9046) reads:

"All corporations formed or existing under this act shall be liable to be assessed for all real and personal estate held by them in this State, at its true value, and shall pay thereon a tax for township, village, city, county and State purposes, the same as other real and personal estate, and such tax shall be assessed, collected and paid in the same manner as other taxes on real and personal estate are required to be assessed, collected and paid: *Provided,* Nothing herein contained shall authorize the taxing of the capital stock of such corporation as such capital stock."

It must be apparent that the capital stock should not be assessed as capital stock. Clearly there is no authorization in this section of the statute for doing what the appellant seeks to have done.

Similar statutes were before the supreme court in Kentucky, in the case of *Commonwealth* v. *Walsh's Trustee,* 133 Ky. 103, and *Commonwealth* v. *Trust Co.,* 147 Ky. 77. In the last named case it was contended as it is contended here, that as some of the property of the corporation was located outside of Kentucky, and paid taxes in another State and not in Kentucky, the stock might be assessed in Kentucky.

In disposing of the case the court said in part:

"The construction demanded by the commonwealth would lead us to the decision that if a Kentucky manufacturing or trading non-franchise corporation were, at any time in the pursuit of its lawful business, to become the holder of any considerable property outside of the State of Kentucky, the holders of its shares of

stock would at once have to list same for taxation; whereas, if the corporation should confine its property holding entirely to Kentucky, its shareholders would not need to list their shares nor submit to a tax upon them. The legislature can hardly have meant to create so unjust a condition. The construction claimed would mean that a Kentucky plant, in order that its shares might not be a separate subject of taxation, must restrict its operations, or rather its property holdings, entirely to the State, and thus be denied the opportunities which thrift and enterprise might give to it by establishing itself in other states as well. * * *

"In the language of section 4085, considered alone, is to be found a strong argument upholding our view of its intent; as well as negativing the commonwealth's theory that all its property must be tax-paid in Kentucky before the stockholders' exemption arises. The statute provides that 'the property of all corporations * * * shall be assessed in the name of the corporation in the same manner as that of a natural person * * * and so long as said corporation pays the taxes on all its property of every kind, the individual stockholders shall not be required to list their shares in said corporation.' Now upon what property, reading the statute in its entirety, must the corporation pay its taxes, before the stockholder's exemption arises? The answer is found in the statute itself and means, of course, that the corporation shall pay taxes upon the property 'assessed in the name of the corporation.' Manifestly the corporation could not pay taxes in Kentucky upon property assessed in some other State. The section of the statute, therefore, answers itself, and makes its meaning clear, *i. e.:* when the corporation has paid the taxes on all its property in Kentucky, assessed in its name, the holder of shares of stock in it need not list them for taxation."

We quote part of section 4002, 1 Comp. Laws 1915:

"For the purposes of taxation personal property shall include: * * *

"7. All shares in corporations organized under the laws of this State, when the property of such corporations is not exempt, or is not taxable to itself; or when the personal property is not taxed."

Whether the assessment of the stock shall stand depends upon the construction put upon this subdivision. The argument of the appellant is that, as the personal property of the Kresge Company is not taxed in this State, the stock owned by the resident of the State should be taxed.

The language of subdivision 7 is not ambiguous. The shares of stock may be placed on the assessment roll when the personal property of the corporation is not taxed. Not taxed where? The appellant says in this State. The statute does not so read, and we are not justified in reading into it something the legislature did not put in. The practical effect of leaving this stock on the assessment roll is to subject the property of the corporation to double taxation.

In the language of Justice HOOKER in *Stroh* v. *City of Detroit, supra:*

"The Constitution does not permit the taxation of both property and shares, and we must, if possible, give such a construction to the law as to make it reconcilable with the Constitution."

The judgment is affirmed, with costs.

BROOKE and KUHN, JJ., concurred with MOORE, J.

OSTRANDER, C. J. It is settled by numerous decisions based upon reasoning which cannot be answered that the constitutional requirement of equal taxation, the ground for refusing double or duplicate taxation, has no application in cases where the alleged double or duplicate taxation is not imposed by the same sovereignty. The *Stroh Case* and the *Thrall Case* are applications of the rule forbidding—at least refusing to uphold—duplicate taxing of property in the same jurisdiction. In the case at bar, duplicate taxation is not attempted. What is attempted is the taxation of the shares of stock of a Michigan corporation, the owner

of which is a resident of this State, some of the property of the corporation being within and some without the State. So much of the property of the corporation as lies within the State is taxed and presumably all of it lying without the State is taxed in the place where it is situated. It cannot be doubted that the shares of stock are property, nor can it be properly claimed that duplicate taxation is attempted.

The general power to tax the shares of stock to the resident owner being clear, the question to be determined is whether the taxing power is limited—whether they are exempt from taxation. The question must be answered as we shall read the statute. The language of the statute to be considered is in section 4002, subd. 7, 1 Comp. Laws 1915, and is:

"All shares in corporations organized under the laws of this State, when the property of such corporations is not exempt, or is not taxable to itself; or when the personal property is not taxed."

Unless exemption from taxation of these shares is found in this provision, they are not exempt. What is meant by the term "is not taxable to itself"? Does it mean not by the law of its organization, or other law, taxable to itself, or does it mean not in fact taxable to itself, as when some or all of it is situated outside the State. The legislature has not said "is not *taxed* to itself," but "is not *taxable* to itself." The property of the S. S. Kresge Company is *taxable* to itself. I cannot persuade myself that the legislature meant that the shares of stock of a Michigan corporation are taxable as the property of the company in the State varies and is actually taxed in the State. The statute deals generally with subjects of taxation. One subject is shares of the stock of Michigan corporations, which are not, however, to be taxed when the property of the corporation *is taxable to itself*. The context, I think, supports this view of the meaning of the par-

ticular provision of the law. According to this view, the shares are not taxable.

STEERE, BROOKE, and STONE, JJ., concurred with OSTRANDER, C. J.

FELLOWS, J. (*dissenting*). I am unable to agree with Mr. Justice MOORE in the conclusion he has reached in this case and pursuant to the provision of the Constitution will state my reasons therefor.

The precise question in the form here presented has not been determined by this court, although the underlying principle has, as I view it, been settled by our adjudicated cases. In the case of *Graham* v. *Township of St. Joseph,* 67 Mich. 652, the plaintiff, a resident of defendant township, was the owner of, and assessed upon, certain shares of stock of an Illinois corporation operating a line of boats on Lake Michigan. The boats were also assessed in the same county in another township where they laid up for the winter. It was held that the boats were not *legally* taxable in Michigan, but were taxable at the *situs* of their owner, the Illinois corporation, but that plaintiff's stock was assessable to him. Surely if the corporate property was taxable in Illinois and the shares of stock representing the same were taxable in Michigan the case presented a case of double taxation as patent as does the instant case, if it is to be held that taxation by two different sovereigns is double taxation within the meaning of the constitutional inhibition.

In the case of *Bacon* v. *Board of State Tax Com'rs,* 126 Mich. 22, the relator, a resident of this State, was the owner of a number of shares of stock of the New York Central & Hudson River Railroad Company, a New York corporation. He was assessed upon such shares. The railroad company was assessed upon its property, all of which was then located outside the State. It was held that the assessment was valid, Mr.

Justice LONG, speaking for the majority of the court, saying:

"One owning shares in a corporation is substantially the owner of an aliquot part of the property of the corporation, although the legal title to such property is vested in the corporation, and not in him. The value of his shares can never vary greatly from the value of the property they represent. This is as true of shares of stock in foreign corporations as of those in domestic corporations. The law taxes both, with the exception of cases where the property of the corporation is taxed in this State. Stated thus (and this is the effect of subdivisions 7 and 9, taken together), there is no want of uniformity of method or rule; and there is no impropriety in thus stating it, for the Constitution cannot be supposed to have been framed with a view to what other States might do."

The very vigorous dissenting opinion of Mr. Justice GRANT advances many arguments here advanced against the enforcement of the tax in the instant case. The case must be taken as holding that the taxation by different sovereigns of the same property represented in different forms, one sovereign taxing the property itself, and the other sovereign taxing the shares of stock representative of an interest in that property, is not double taxation.

In *Thrall* v. *Guiney*, 141 Mich. 392, the court had under consideration the following state of facts: Thrall, as administrator of the estate of one Taylor, held certain stock of a New Jersey corporation, a portion of whose tangible property was located in and was taxed in this State. The respondents board of assessors had assessed to the estate the value of the stock of such foreign corporation after deducting the value of the Michigan property. It was held to be undoubtedly true that there was no statutory provision for such deduction and that difficulties would arise in fixing values of such shares if such method were used, but it was said:

"In the case before us there has been an assessment of the shares of relator, which he consents is a proper one if they are held to be assessable. We are of opinion that such shares were taxable, and, whatever difficulties may arise in other cases, that he cannot complain of the particular assessment made. There are many difficulties in the assessment of property under laws designed and framed, so far as general enactments can be framed, to insure recognition and operation of constitutional requirements. Courts must meet and deal with such matters as they arise. We are not here required to say more than that we find no reason to interfere with the assessment complained about."

In the case of *Stroh* v. *City of Detroit*, 131 Mich. 109, the stock assessed was that of a foreign corporation whose entire property was located in this State and here assessed to the corporation. The stock was assessable, within the strict letter of subdivision 9, of the section involved (section 4002, 1 Comp. Laws 1915), but to tax it would offend the superior mandate of the Constitution, and it was held that this court was justified in holding that the exception found in subdivision 7 applied to both foreign and domestic corporations. The statute as thus construed, was free from unconstitutional taint and did not work double taxation. But the double taxation there involved was a taxation of all the property of the corporation and the shares of stock which represented it by the same sovereign.

An examination of the record in the case of *Union Trust Co.* v. *Detroit Common Council*, 170 Mich. 692, discloses that the stock in Michigan corporations, there held by the relator and mentioned in the opinion, was stock in Michigan corporations all of whose property was located in Michigan, so that this court did not have before it the question presented in the instant case.

Turning now to the two Kentucky cases cited by Mr.

Justice MOORE, those of *Commonwealth* v. *Walsh's Trustee*, 133 Ky. 103, and *Commonwealth* v. *Trust Co.*, 147 Ky. 77, it will be seen that the second of these cases follows the holding of the first one; each dealing, however, with different but similar provisions of the taxing law of that State. The first of these cases involved an assessment upon the stock in a public utility corporation, the Western Union Telegraph Company, held by a citizen and resident of that State. As to such corporations the statute of the State of Kentucky provided (section 4088, Kentucky Stat. 1915) :

"The individual stockholders of the corporation which are, by this article, required to report and pay taxes upon the corporate franchise, shall not be required to list their shares in such companies so long as the corporations pay the taxes on the corporate property and franchises as herein provided."

And it was held that the Western Union Telegraph Company having fully complied with this provision of the statute, and paid its tax thereunder, the individual stockholders of that company were not required to list their stock for taxation. This was but a following of the provision of the Kentucky statute. In the second of these cases the provisions of section 4085, Kentucky Stat. 1915, was involved. This section reads as follows:

"The property of all corporations, except where herein differently provided, shall be assessed in the name of the corporation in the same manner as that of a natural person, except that, when legally called on, the chief officer shall report a full statement of the property of such corporation for taxation, and, for a failure, shall be subject to the penalties in this article provided; and so long as said corporation pays the taxes on all its property of every kind, the individual stockholders shall not be required to list their shares in said corporation."

Following the former holding and construing this

section, it was held that the individual stockholder was not required under this provision to list his stock for taxation. But these decisions are based on the provisions of the Kentucky statute which I have quoted.

The question of what constitutes double taxation, or as it is sometimes called duplicate taxation, has arisen not infrequently in the courts of last resort of the several States and that of the Nation. To properly consider each case, to differentiate and distinguish, or to harmonize them all, would require a treatise out of proportion to the function of a judicial opinion. Some of them will be found to have recognized greater power in the State than has this court, but with rare exceptions there will be found running through them the general tendency to which this court has adhered through the decisions to which I have called attention, and which tendency may be summarized in the statement that where the same property is twice taxed for the same purpose by the same government the taxation is double within the meaning of the constitutional requirement of uniformity in taxation; where the same property, although in different form, is twice taxed by different governments for different purposes it is not double or duplicate taxation within the constitutional provision. Thus it has never been seriously urged that property in a village may not be taxed by the State government for State purposes, the county government for county purposes, the township government for township purposes and the village government for village purposes. The same property and the same taxpayer respond in four instances to governmental demand for revenue, but the government in each case is different, the purpose in each case is different and the constitutional inhibition against duplicate taxation is not infringed.

The courts recognize with substantial unanimity that inequality in the burden that rests upon different

classes of property must arise in our complex taxation systems, and that absolute equality and uniformity of taxation, dollar for dollar, upon each and all classes of property is a Utopia to be dreamed of but never attained. So, also, the courts recognize the right of one State to tax the property of a corporation at the *situs* of its owner, the corporation, and of another State to tax the shares of the corporation at the *situs* of their owner, the shareholder, without offending constitutional restraint. It may offend the ethics of the political economist but it does not infringe the fundamental law; as was said by Mr. Justice Holmes, writing for the court in *Kidd* v. *Alabama*, 188 U. S. 730:

> "No doubt it would be a great advantage to the country and to the individual States if principles of taxation could be agreed upon which did not conflict with each other, and a common scheme could be adopted by which taxation of substantially the same property in two jurisdictions could be avoided."

This was a case like the *Bacon Case*. The taxpayer, a citizen of the State of Alabama, was taxed upon shares of stock of a railroad located in another State. He insisted that his constitutional rights, under the 14th amendment, had been invaded. In this the court declined to sustain him. Mr. Justice Holmes further said:

> "We say that the State in taxing stock may take into account the fact that the property and franchises of the corporation are untaxed, whereas in other cases they are taxed; and we say untaxed, because they are not taxed by the State in question. The real grievance in a case like the present is that, more than probably, they are taxed elsewhere. But with that the State of Alabama is not concerned."

In *Bradley* v. *Bauder*, 36 Ohio St. 28, the taxation of shares to a shareholder of the stock of the Western Union Telegraph Company, a small portion of whose property was within the State of Ohio, was in-

volved. By far the major portion of the property of the telegraph company was taxed by other States. It was said by the court:

"The constitutional power to tax shares of stock, owned by our citizens in corporations located without the State, does not depend on whether the capital of the corporation is or is not taxed in the State where the corporation is created. The power is the same, whether the capital of the corporation is there taxed or not; otherwise, the power of taxation conferred by the constitution would be made to depend upon the operation of laws of a foreign jurisdiction—a proposition so obviously ill founded that the moment it is stated its falsity becomes apparent."

Later, in the case of *Hubbard* v. *Brush,* 61 Ohio St. 252, the same court had before it the question of the taxation of the shares of a West Virginia corporation whose business was located in Ohio, and it was held that unless all the corporate property was taxed in Ohio the shares were not exempt under a statute somewhat similar to our own. It is not necessary that we adopt in the instant case this doctrine in full, but the case is authority to the point, that unless the legislative intent to exempt a particular class of property from taxation is clear the property is taxable, a doctrine fully sustained in *Sturges* v. *Carter,* 114 U. S. 511, and other authorities to which we shall presently refer.

The supreme court of Iowa discusses the question of double taxation where the property of the corporation is assessed in another State, and it is sought to tax the shares to the owners thereof in Iowa, in the case of *Judy* v. *Beckwith,* 137 Iowa, 24. It was there said:

"In the first place, as we shall hereinafter see, the shares owned by the testator were not assessed in Illinois. But even if that point be waived, and it be conceded that the shares were in fact assessed in Illinois, it cannot be presumed, at least in the absence of a clearly expressed purpose to that effect, that the

legislature undertook to relinquish in favor of another State its sovereign right to tax any and all property found within its jurisdiction.     *     *     *

"It is urged, however, that even if the general rule be conceded to be as stated, still, where the effect of its application is to impose double taxation, the courts will refuse to apply it.  Few will be disposed to deny that double taxation, within the proper meaning of that expression, is not favored in law.  *Tallman* v. *Butler County*, 12 Iowa, 534; *National State Bank* v. *Young*, 25 Iowa, 311; *Faxton* v. *McCosh*, 12 Iowa, 527. But the trouble with the appellee's case is in the fact that the taxation which they are here resisting is not double within the rule to which they appeal.  Each State is sovereign within its own territorial jurisdiction, and its power to tax any and all property therein, except such as is in actual transit through it, cannot be taken away, limited, or lessened by the act of the taxing authorities of any other State.  (Citing authorities.)   When a State finds property within its jurisdiction, it is not necessary, before taxing it, to investigate and ascertain whether any other State has already taxed it or asserts the right so to do; and if it happens that two or more jurisdictions have levied a tax upon the same item or description of property for the same period it is not double taxation within the condemnation of the law.  A double taxation, obnoxious to the rule, is where the second or additional burden is imposed by the same sovereignty which imposed the first."

The rule was very tersely stated in *Wright* v. *Railroad Co.*, 195 U. S. 219:

"A tax in another State is no tax for the purposes of the State of Georgia."

In *City of San Francisco* v. *Fry*, 63 Cal. 470, the assessment was upon the shares of stock of a California corporation owning mining property in Nevada, upon which it there paid taxes assessed thereon.  It was there said considering a statute similar to ours:

"This section only applies to corporations whose property is situate in this State.  The legislature could

pass no laws which would operate in the State of Nevada, and it could not be held as law that the legislature of California was engaging in its appropriate work of legislation with regard to property situate in another State."

The supreme court of the State of Louisiana, in considering the right of that State as against the claim of double taxation to tax property already taxed in another State, said:

"To abstain from taxing property because it has paid taxes to another sovereign, might be well enough in altruistic philosophy, but has no place in any revenue system based on sound principles. Taxation and legal protection must go together. If this property enjoys the benefit of the protection of the laws of this State it must, under sound principles of taxation, pay its just quota towards defraying the expense of the administration of those laws; and to let it off from the payment would be an invidious discrimination against the other property of the State which would then have to bear that much more than its just and equal share of the expense of the administration of the laws. By this prohibition our law-makers have not intended to make an excursion into the domain of sentiment but have intended that property taxed in a parish should not be taxed again in the same or in another parish for the same year; or, in other words, have intended to give statutory expression to the principle of equality and uniformity in taxation, a principle not abraded by taxing a second time property already taxed by another sovereign." *Griggsry Const. Co.* v. *Tax Collector,* 108 La. 435.

To the same effect will be found the following, among other cases: *Dyer* v. *Osborne,* 11 R. I. 321; *Ogden* v. *City of St. Joseph,* 90 Mo. 522; *Seward* v. *City of Rising Sun,* 79 Ind. 351; *City of San Francisco* v. *Flood,* 64 Cal. 504.

In view of the holdings of this court, and of the authorities which I have cited, and others which might be added, I am clearly of the opinion that there is no constitutional infirmity in taxing the shares of a cor-

poration owned by a resident of this State, even though such corporation has paid taxes on its property in another State, and that the legislature, by the use in subdivision 7, of section 4002, 1 Comp. Laws 1915, of the words "or when the personal property is not taxed," had reference to and only to personal property not taxed in this State. The legislature was speaking on the subject of Michigan taxation and had no occasion to mention or take into consideration the taxation measures of any other State or sovereignty.

Nor am I able to follow counsel for defendant in his construction of section 31, of the "Denby act" so-called, being section 9562, 4 How. Stat. (2d Ed.) ; 2 Comp. Laws 1915, § 9046. This section is quoted by my Brother MOORE in his opinion. After providing for the taxation of the property of the corporation as other property is taxed, it is provided:

"Nothing herein contained shall authorize the taxing of the capital stock of such corporation as such capital stock."

My reasons for this are: *First,* That there is a difference and a marked one, between capital stock in the hands of the corporation and shares of stock in the hands of the shareholder; and, *second,* that we cannot presume that the legislature intended to exempt any species of property from taxation, that to exempt any species of property from taxation the legislative intent-so to do must be clear.

While it is true that a shareholder in a corporation is substantially the owner of an aliquot part of the property of the corporation, and as such entitled to his share of the dividends, and upon its dissolution to his share of its assets, still the legal title to the property, its capital stock, is in the corporation, while the legal title to the share which he owns is in him. It was said by Mr. Justice Hughes, in the case of *Hawley* v. *City of Malden,* 232 U. S. 1:

"While the shareholder's rights are those of a member of the corporation entitled to have the corporate enterprise conducted in accordance with its charter, they are still in the nature of contract rights or *choses in action*. 1 Morawetz on Corporations, § 225. As such, in the absence of legislation prescribing a different rule, they are appropriately related to the person of the owner, and, being held by him at his domicile, constitute property with respect to which he is under obligation to contribute to the support of the government whose protection he enjoys."

In *Allen* v. *Commonwealth*, 98 Va. 80, it was said by the court:

"The shares of stock held by the individual stockholder, as was said at the outset of this opinion, is something wholly distinct from the capital of the company, though it is true that all the shares taken together constitute the company and represent its franchises, capital and property."

The supreme court of North Carolina, in the case of *Board of Com'rs of Durham Co.* v. *Tobacco Co.*, 116 N. C. 441, very clearly pointed out the distinction between the "capital stock" of a corporation and its "shares." I quote the syllabus:

" 'Capital stock' is a distinct subject of taxation from 'shares of capital stock,' the former representing the entire property, business, good-will, etc., of the corporation and belongs to it, while the latter belong to the individual stockholders and are taxable *ad valorem* like other property."

In the case of *Shelby County* v. *Planters' Bank*, 161 U. S. 149, the court had before it the inverse of the question here involved. The shares under the charter were assessable at the rate of one-half of one per cent. It was insisted and held by the court below that the capital stock in the hands of the corporation was thereby exempt. Mr. Justice Peckham, who wrote the opinion, takes up and considers those cases thought to

sustain the views of the court below, distinguishes them from the case in hand, and in the course of the opinion reversing the case, says:

"We come to this conclusion because of the fact, well established by the decisions of this as well as many State courts, that there is a clear distinction between the capital stock of a corporation and the shares of stock of such corporation in the hands of its individual shareholders. So separate are these properties, and so distinct in their nature, that the taxation of the one property is not the taxation of the other."

See, also, *Atlanta Nat. Building & Loan Ass'n* v. *Stewart*, 109 Ga. 80; *Danville Banking & Trust Co.* v. *Parks*, 88 Ill. 170; *United States Electric Power & Light Co.* v. *State*, 79 Md. 63; *Street Railroad Co.* v. *Morrow*, 87 Tenn. 406; *Judy* v. *Beckwith, supra.* Some of these cases involve questions not now being considered and I cite them only as sustaining the proposition that there is a distinction between the capital stock of a corporation and its shares of stock in the hands of its stockholders.

The distinction is clearly pointed out in Ruling Case Law in the following language:

"Capital stock of a corporation is the fund, property, or other means contributed, or agreed to be contributed, by the shareholders as the financial basis for the prosecution of the business of the corporation, such contribution being made either directly through stock subscription, or indirectly through the declaration of stock dividends. * * * The tangible property of a corporation and the shares of stock therein are separate and distinct kinds of property and belong to different owners, the first being the property of the artificial person—the corporation—the latter the property of the individual owner." 7 R. C. L. pp. 195, 196.

When we examine the section under consideration, especially in view of the use of the words "as such capital stock," and we take into consideration that the capital stock of a corporation consists, not only of its

tangible property, but also of good-will, franchise, trade marks and other intangible assets, the legislative intent to exempt the shares of stock in the hands of shareholders is wanting. The legislature was not considering in this section, the taxation of the individual shareholder, but was considering the taxation of the property of the corporation. This view, as I have already stated, is fortified by the rule, that the intent to exempt from taxation must clearly appear.

"It has been repeatedly held by this court that an exemption from taxation must be expressed in clear and unmistakable terms and cannot be shown by doubtful or ambiguous language." *Sturges* v. *Carter, supra.*

To the same effect will be found many of the cases already cited.

It is urged by counsel for the defendant that the administrative construction of the sections under consideration is as he contends, and that such administrative construction should be given due weight. I agree with counsel, that the administrative construction should be given due consideration by this court, but I do not agree with counsel that such construction is as contended. Indeed, I think it is in accordance with the claim of the plaintiff. Counsel cites us to an opinion rendered by Attorney General Oren to the board of State tax commissioners on March 19, 1900 (Rep. of Atty. Gen. 1900, p. 169), in which the attorney general states: .

"If the property of a corporation is assessed to itself then the shares are not assessable to the individual holders thereof."

This was in accordance with the statute and the holdings of this court, but the attorney general was not then considering the question here involved. He had under consideration the question of whether section 8547, 3 Comp. Laws (3 Comp. Laws 1915, §

11338), had been repealed by the general tax law of 1893. Later, and in 1902 (Rep. Atty. Gen. 1902, p. 125), the same attorney general had an analogous question to the one here involved before him. The Page Woven Wire Fence Company was a foreign corporation owning and paying taxes upon considerable property in this State. It also owned considerable property outside the State. The question involved was the proper method to be adopted in the assessment of the stock of this corporation. Attorney General Oren, in the course of an opinion to the board of State tax commissioners under date of April 16, 1902, said:

"As, under what has been said, both the shares of stock and property of the corporation in question cannot be subjected to taxation in this State, at the same time, unless in reaching the value of those shares of stock, a deduction be made of the property upon which taxes are paid within this State, the statutory provision providing for the taxation of shares in foreign corporations must, therefore, be construed so as to effect a constitutional rule of taxation, and unless it can be so construed, it would be unconstitutional to the extent that it requires, or permits, duplicate taxation, and thereby violates the constitutional rule of uniformity. In reaching the value of the shares of stock of the Page Woven Wire Fence Company, held in this State, for the purpose of taxation, allowance must be made for the value of the property upon which that company pays taxes in this State."

I am unable to find any opinion of that department in any way changing or modifying this holding. It fixes the departmental construction, has not been changed and is entitled to its due weight by this court.

The corporation has been taxed in the State of Michigan upon one-fifth of its personal property and it has been taxed in Michigan upon no more. Therefore, one-fifth of the value of the stock has responded to the taxing power of this State, and no more has so responded. The *situs* of the shares of stock is the *situs*

of its owner, the defendant. Four-fifths of the personal property of the corporation has not been taxed in the State of Michigan, and four-fifths of the value of the stock has not responded to the taxing power of this State. It is said that there is no statutory authority for making the deduction of one-fifth the value; true, but the superior mandate of the Constitution must be taken into consideration, as was done in the *Stroh Case,* and when taken into consideration it exempts under the rule requiring uniformity of taxation that portion, and that portion only, of the property of the corporation which has been taxed within the State. The constitutional inhibition goes no further. We should give it its full force and so construe the statute as that it will square with the fundamental law. When we have done this the statute also must be given force, and the statute only purports to exempt the shares when the personal property of the corporation is taxed. When only a portion of the personal property is taxed the constitutional requirement is complied with when the portion taxed is deducted from the value of the stock. While this may be difficult in some instances it is far better that assessing officers be put to inconvenience, than that constitutional rights be invaded on the one hand, or that the State be deprived of its sources of revenue on the other. The course pursued in the instant case has the sanction of judicial authority. The inheritance tax laws of the different States (except under the amendment made by the State of Massachusetts) require the collection of a transfer tax upon stocks held by nonresidents in local corporations. There is, except as above stated, no specific provision permitting any deduction from their full value. In cases where the corporation owned property in more than one State there was no statutory provision permitting deductions which would limit the amount to that which the State might, under its

power, and in justice, collect. But having regard for both the rights of the State under the Constitution and its statutory provisions as written, the States have been permited to collect, not the full amount fixed by the literal wording of the statute, but the full amount less the deduction required to be made by the limit of the power of the State. *Gardiner* v. *Carter*, 74 N. H. 507; *In re Cooley*, 186 N. Y. 220; *Matter of Thayer*, 193 N. Y. 430; *Kingsbury* v. *Chapin*, 196 Mass. 533. This method of levying inheritance taxes has long been in vogue in this State.

I am satisfied that the assessment was validly levied, that no constitutional or statutory rights of the defendant were invaded, and that the case should be reversed, with a new trial. Plaintiff should recover costs of this court.

BIRD, J., concurred with FELLOWS, J.